JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| | Case No.: SACV 16-01055-CJC(DFMx) |
| **GARETH ASHWORTH,** | |
| **Plaintiff,** | |
| **v.** | **ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE** |
| **TEAM INDUSTRIAL SERVICES, INC.,** | |
| **Defendant.** | |

## I.  INTRODUCTION

Plaintiff Gareth Ashworth brings claims for breach of contract and wrongful termination against public policy against Defendant Team Industrial Services, Inc. ("Team").  (Dkt. 1-1.)  Ashworth filed this action in Superior Court for the State of California, County of Orange, and Team removed the case to this Court on the basis of

diversity jurisdiction.  (Dkt. 1.)  Team now moves to transfer venue to the U.S. District Court for the Southern District of Texas. (Dkt. 21.)  For the following reasons, the motion is GRANTED.[1]

## II.  BACKGROUND

In 2004, Gareth Ashworth founded Global Ascent, Inc. ("Global Ascent"), which provided rope access services to clients in the energy and industrial markets in the United States and abroad.  (Dkt. 24 [First Amended Complaint ("FAC")] ¶ 8.)  Rope access "is a procedure by which employees rapel into hard-to-reach areas of industrial equipment and refineries to conduct safety inspections."  (*Id.* ¶ 1.)  From 2004 until 2015, Global Ascent's principal place of business and only permanent office was in Fullerton, California.  (Opp. at 3.)  Global Ascent's safety procedures are certified by the Industrial Rope Access Trade Association ("IRATA").  (FAC ¶ 1.)

Team is an industrial services company offering services related to construction, maintenance, and monitoring of pressurized piping and associated systems in more than 130 U.S. and international locations.  (Mot. at 2.)  Team's business includes rope access services.  (*Id.*)  Team was founded in 1973 and is headquartered and incorporated in Texas.  (*Id.*)  Team also has forty other locations in Texas in addition to its headquarters—the most in any state.  (*Id.*)

On July 19, 2013, Team acquired Global Ascent through a Stock Purchase Agreement ("SPA").  (*Id.* ¶¶ 8–9.)  Ashworth negotiated the terms of the acquisition on behalf of Global Ascent.  (Opp. at 4.)  The initial meeting took place in Fullerton,

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for September 12, 2016, at 1:30 p.m. is hereby vacated and off calendar.

California, (Opp. at 4), and Ashworth travelled to Team's Sugar Land, Texas headquarters on April 23, 2013 to continue negotiations, (Mot. at 3–4). It appears that all other negotiations took place via telephone. (Mot. at 3; Opp. at 4.) Ashworth continued to work as the leader of Global Ascent, which now operated as a wholly owned subsidiary of Team. (FAC ¶ 2; Mot. at 4). Global Ascent reported to, was supervised by, received directives from, and was compensated by Team's headquarters in Texas. (Mot. at 4.) Pursuant to the SPA, Team purchased all of Global Ascent's stock, and Ashworth would receive extra "earn-out payments" if Global Ascent's rope access business met certain threshold earning requirements. (FAC ¶ 3.) Ashworth received $1 million in earn-out payments for fiscal year 2014. (*Id.*)

In June 2015, Team spent approximately $255 million in the acquisition of another rope access company, Qualspec. (FAC ¶ 4.) After the acquisition, Team allegedly began shifting rope access business to Qualspec and eventually "eliminated Global Ascent as a stand-alone entity." (*Id.*) Ashworth was then demoted to Vice President - Business Development & Technical Support for Rope Access on April 26, 2016, and relocated to the Qualspec office in Torrance. (*Id.* ¶ 31.) According to Team, Ashworth's salary was not affected by the demotion. (Mot. at 6.) Team informed Ashworth that his position would require more travel time to national and international locations, and that he would have to relocate to the Qualspec facility in Torrance, doubling his commute time. (FAC ¶¶ 30–31.) On May 31, 2016, Ashworth's attorney e-mailed Team claiming that Ashworth had been constructively terminated and forced to resign, and that Team had breached the SPA. (Mot. at 7.) Thereafter, Ashworth has not reported for work. (*Id.*)

The parties offer markedly different reasons for Ashworth's demotion. According to the FAC, Qualspec employs the safety standards set out by the Society for Professional Rope Access Technicians ("SPRAT"), which "requires half the time and experience as IRATA." (FAC ¶ 4.) After the Qualspec acquisition, Ashworth began to insist that

SPRAT standards exposed Team employees to "an unacceptably high risk of serious accident and death" and repeatedly stated at various meetings with members of Team management that Team should adopt the IRATA standard.  (*Id.* ¶¶ 4, 19–24.)  Team did not agree and refused to comply with Ashworth's demands.  (*Id.*)  Around this time, Ashworth also refused to agree to proposed amendments to the SPA, which would affect his earn-out payment rights.  (*Id.* ¶¶ 28–29.)

According to Team, Ashworth "created a number of problems in connection with his employment with Team including a lack of cooperation, violations of company policies, an unwillingness to follow or adhere to requests from his superiors and colleagues, lack of communication and a general unwillingness on Ashworth's part to work with others at Team."  (Mot. at 5.)  For example, Ashworth was unwilling to "provide Global Ascent employees with benefits and increased pay commensurate with the rest of Team and the general market."  (*Id.*)  According to Team, Ashworth's complaints regarding deficiencies in safety certification procedures were erroneous, and "various Team employees offered Ashworth assistance in completing the certification and providing reports that dispelled his concerns, but to no avail." (*Id.*)

On May 31, 2016, Ashworth filed a claim against Team for breach of contract and wrongful termination against public policy in state court.  (*See generally* Dkt. 1-1.) Ashworth alleges that "Team has breached the SPA by failing to deliver Earn Out Statements and, upon information and belief, by relying upon false revenue reporting by Qualspec to Global Ascent's disadvantage."  (FAC ¶ 34.)  Additionally, his demotion "following his identification of safety concerns constitutes an adverse employment action taken against him by Team," and the requirements of his new position "made it impossible for him to perform adequately in light of his childcare responsibilities and made it intolerable for him to continue his employment at Team while the company continued to place the health and safety of Team employees at risk."  (*Id.* ¶ 35.)

On June 7, 2016, Team removed the action to this Court.  (Dkt. 1.)  On July 18, 2016, Team moved to transfer venue to the U.S. District Court for the Southern District of Texas.  (Dkt. 21.)  Ashworth amended his complaint on August 8, 2016, adding California Labor Code Section 6310(b) to his claim for wrongful termination against public policy.  (Dkt. 24.)

## III.  ANALYSIS

A district court has discretion to transfer a civil action "for the convenience of parties and witnesses, in the interest of justice," to "any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Under section 1404(a), two findings are required for proper transfer: (1) the transferee district court is one where the action might have been brought, and (2) the convenience of the parties and witnesses and the interest of justice favor transfer.  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

### A.  Whether the Case Could Have Been Brought in Texas

Here, the parties do not appear to dispute that this action could have been brought in the Southern District of Texas.  Personal jurisdiction exists where a corporation is incorporated or has its principal place of business.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 749 (2014).  Team alleges, and Ashworth does not contest, that the Southern District of Texas would have personal jurisdiction over Team, because it is both incorporated and has its principal place of business in Sugar Land, Texas.  (Mot. at 11.)

The Southern District of Texas would also have subject matter jurisdiction sitting in diversity.  The parties are diverse, as Ashworth is a resident of Orange County, California, and Team is a Texas corporation with its principal place of business in Texas.  (FAC ¶ 6–7.)  The FAC also appears to seek damages in excess of $75,000, since

Ashworth alleges, among other things, that Team did not act in good faith in a manner that allowed Global Ascent to achieve its earn-out thresholds, (*Id.* ¶ 39), and the SPA earn-out payment schedule contemplates payments of $500,000 or more, (*Id.* ¶ 10.)

Finally, venue is proper in the Southern District of Texas because Team, the only defendant, resides in that judicial district.  *See* 28 U.S.C. § 1391(b)(1).  Team's principal place of business is in Sugar Land, Texas.  (Mot. at 9.)  Accordingly, the first element of the transfer determination—that the action "might have been brought" in the transferee court—is met.  *See* 28 U.S.C. § 1404(a).

## B.  The Convenience Factors

A court may consider multiple factors in determining whether the interests of justice favor transfer, including: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof," in addition to the relevant public policy of the forum state.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).[2]  The moving party bears the burden of demonstrating that transfer is appropriate.  *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001).  District courts have broad discretion to adjudicate

---

[2] Team maintains that Texas law applies to the adjudication of this motion.  (Mot. at 7 n.1; Reply at 2–3.)  However, the framework for venue determinations is governed by controlling Federal law, even in diversity suits.  *See Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 28 (1988); *Dist. No. 1, Pac. Coast Dist., M.E.B.A. v. State of Alaska*, 682 F.2d 797, 798 (9th Cir. 1982).  Texas state law and out-of-circuit federal law are not binding on this Court when applying the test for transfer of venue.  However, in weighing the convenience factors, secondary substantive questions will arise that may be governed by state law.  *See* Part B.2.

motions for transfer according to an individualized, case-by-case consideration, *Jones*, 211 F.3d at 498, and must undertake a "flexible and individualized analysis" of relevant factors, *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

### 1.   Where the Relevant Agreements were Negotiated and Executed

Considerations of where the relevant agreements were negotiated and executed do not appear to weigh in favor of either party's position.  The relevant agreement in this case is the SPA, which dictated the terms of Ashworth's employment and compensation. (*See* Dkt. 22-3 Exh. 1.)  The initial meeting and solicitation of Global Ascent took place in Fullerton, California, and Ashworth travelled to Texas on April 23, 2013 to continue negotiations.  (Opp. at 4; Mot. at 3–4.)  However, as Ashworth notes, the majority of negotiations happened via telephone while Ashworth was in California and Team was in Texas.  (Opp. at 12.)  Though not entirely clear, it appears that the SPA was also executed in the parties' respective places of business.  (*See* Mot. at 3; Opp. at 12.) Therefore, this factor appears to be neutral.

### 2.   The State Most Familiar with the Governing Law

Governing law in this dispute does not weigh heavily in favor of either party's position.  To determine whether Texas or California substantive law applies, a federal court sitting in diversity must apply the choice-of-law rules of the state in which they sit. *See Shannon–Vail Five, Inc. v. Bunch,* 270 F.3d 1207, 1210 (9th Cir. 2001).

With regard to the breach of contract claim, the Court must analyze the effect of the choice of law clause in the SPA.  Article 7.11 of the SPA provides that "This Agreement and the performance of the Transactions and obligations of the Parties hereunder will be governed by and construed in accordance with the laws of the State of

Texas, without giving effect to any choice of Law principles." (Dkt. 22-3 Exh. 1.)  The Court need not undertake conflict of law analysis here, because the substantive law of California and Texas are the same regarding enforceability of the choice of law provision. In both states, if the contract contains no choice of law agreement, the law of the place of performance or the law of the place where the contract was made will govern, but if the parties entered into a choice of law agreement, the intention of the parties will govern. *See Shannon–Vail Five,* 270 F.3d at 1210-11; *Budge v. Post*, 643 F.2d 372, 374 (5th Cir. 1981).  Therefore, Ashworth appropriately concedes that his breach of contract claim is governed by Texas law.  (Opp. at 13.)

However, Ashworth's claim of wrongful termination against public policy is not based on or related to the contractual obligations of the parties under the SPA.  Ashworth brings this claim based on his demotion and allegedly forced resignation as a result of his complaints concerning inadequate safety procedures.  (FAC ¶¶ 45–47.)  Specifically, he brings a claim for retaliation for filing a complaint under California Labor Code Section 6310(b) and for adverse employment action in violation of public policy based on safety requirements laid out in California Code of Regulations, Title 8, Section 3270.1. Ashworth's complaints regarding safety procedures are independent of his obligations laid out in the SPA. (*See* Dkt. 22-3 Exh. 1.) Additionally, a claim of wrongful termination in violation of public policy sounds in tort, not contract, further indicating that the SPA choice of law provision does not govern this claim.  *See, e.g., Ortiz v. Permanente Med. Grp., Inc.*, No. C 13-00460 SI, 2013 WL 1748049, at *6 (N.D. Cal. Apr. 23, 2013); *Miklosy v. Regents of Univ. of California*, 44 Cal. 4th 876, 900 (2008).  Therefore, the Court must undertake conflict of law analysis.

To assess conflict of law issues in tort cases, California courts first must determine whether the laws of the two states differ.  If they do, the Court must then assess the interests of the two states "in having their respective laws applied," and "which state's

interest would be impaired to the greater degree if its law were not applied."  *Kilroy Indus. v. United Pac. Ins. Co.*, 608 F. Supp. 847, 858 (C.D. Cal. 1985).

In California, "To recover in tort for wrongful discharge in violation of public policy, the plaintiff must show the employer violated a public policy affecting 'society at large rather than a purely personal or proprietary interest of the plaintiff or employer.'" *Holmes v. Gen. Dynamics Corp.*, 17 Cal. App. 4th 1418, 1425 (1993).  "The policy at issue must be substantial, fundamental, and grounded in a statutory or constitutional provision."  *Id.*  This includes claims for retaliation against an employee for reporting suspected illegal conduct that harms the employer and the public.  *Id.*  This is a broad exception to the at-will employment doctrine.  *See id.*  By contrast, Texas only recognizes a narrow exception to the at-will employment doctrine where an employee *refuses to perform* an illegal act.  *See, e.g., Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985).  Since the Texas cause of action is substantially narrower, these laws differ.

California has "strongly reaffirmed the viability of the public policy exception to the at-will employment doctrine."  *Holmes v. Gen. Dynamics Corp.*, 17 Cal. App. 4th 1418, 1425, 22 Cal. Rptr. 2d 172 (1993).  Given that Ashworth was working in California when the alleged adverse employment action was taken, and that California has intentionally created a broad exception to the traditional at-will employment doctrine, the Court finds that California has a greater interest in application of its law and its interest would be more greatly impaired if this law was not applied to Ashworth's second cause of action.

Since the Complaint alleges two causes of action, one governed by Texas law and one governed by California law, the courts' familiarity with governing law is neutral. However, the Court has every confidence that the Southern District of Texas can apply California law to Ashworth's second cause of action, which embodies a discrete

exception to the at-will employment doctrine.  By contrast, it will be more difficult for this Court adjudicate Ashworth's first cause of action for breach of the SPA, which will involve broad swaths of Texas contract law.  Therefore, practical considerations weigh in favor of transfer.

### 3.  The Plaintiff's Choice of Forum

While a plaintiff's choice of forum is presumed to have considerable weight, *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.1986), courts will not accord weight to this factor in many instances.  For example, a defendant can overcome this presumption with a strong showing of inconvenience. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir.1986).  As the discussion in the following sections will demonstrate, Team has made a strong showing of inconvenience here.

Furthermore, where there is a forum selection clause, a plaintiff's choice of forum merits no weight.  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013).  Section 7.7 of the SPA provides, in relevant part, that "the parties agree that jurisdiction and venue in any action brought by any party pursuant to this agreement shall properly (but not exclusively) lie in any federal or state court located in the state of Texas." (Dkt. 22-4.)  The Court is cognizant of the fact that although there is a forum selection clause in the SPA, it is non-exclusive, so the forum selection clause does not automatically control.  Nevertheless, the Court in its discretion finds that this is a strong reason to afford Ashworth's choice of forum less deference.  Section 7.11 of the SPA also provides that disputes arising under the agreement will be decided exclusively by Texas law, further undermining the Plaintiff's choice of venue.  (*Id.*)  Accordingly, the Court will not assign weight to Ashworth's choice of venue in its analysis.

### 4.   The Respective Parties' Contacts with the Forum

The parties' contacts with the Southern District of Texas weigh in favor of transfer. Ashworth had substantial contact with multiple Team employees in Texas during the negotiation and execution of the SPA.  (Mot. at 3; Opp. at 4.)  Although Global Ascent is wholly owned subsidiary in California, it operated under the control and management of Team, headquartered in Texas.  (Mot. at 2.)  As the leader of Global Ascent, Ashworth was a Team employee directly responsible to, and in regular communication with, personnel at the Texas headquarters.  (*Id.*)  Team, in turn, is incorporated in Texas and its principal place of business is in Texas, and it has forty other locations in Texas in addition to its headquarters—the most in any state.  (Mot. at 3.)  Therefore, both parties' contacts with the Southern District of Texas are substantial, and this factor weighs in favor of transfer.

### 5.   The Contacts Relating to the Plaintiff's Cause of Action in the Chosen Forum

Ashworth's contacts with Texas predominantly gave rise to the causes of action in this suit, because his claims are based on high-level corporate management decisions. The Complaint takes issue with Team's practices and policies concerning his earn-out payments, the decision to divert business from Global Ascent to Qualspec, the appropriate safety standards to adopt, his demotion, and other managerial decisions. (FAC ¶¶ 34, 40.)  These decisions are not based on Ashworth's contacts in managing Global Ascent in Orange County.  Rather, the policies at issue in the FAC are set by Team's corporate office in Texas.  (*See* Mot. at 4–7.)  Therefore, this factor weighs in favor of transfer.

### 6.  Ease of Access to Sources of Proof

This factor weighs heavily in favor of transfer.  Team has identified fourteen likely material witnesses in this case, eight of whom are located in Team's Texas headquarters, and four more who regularly travel to Texas for corporate meetings and other work.  (Reply at 7.)  According to Team, these witnesses played key roles in the acquisition of Global Ascent, the negotiation and execution of the SPA, and/or the supervision of Ashworth as a team employee.  (Mot. at 13.)  The Complaint's allegations and claims arise from the managerial decisions and corporate policies of such high-level personnel at Team, including decisions about how to allocate business, what safety standards to employ, and whether to demote Ashworth.  Ashworth also reported to two Team employees based in Indiana who regularly travel to the Sugar Land headquarters and attend meetings three times a year at the Houston office.  (Mot. at 4-5.)  By contrast, only two or three likely witnesses, including Ashworth, reside in the Central District of California.  (Mot. at 14; Reply at 7.)  Therefore, it is more inconvenient for the parties and witnesses to litigate this case in the Central District of California.

Additionally, most of the key electronic and physical documentation, including those related to corporate policy and finance, is located in Texas.  (Mot. at 15; Reply at 10.)  While Ashworth notes that electronic discovery and videoconferencing could make these sources of proof available in California, (Opp. at 16, 18), that does not diminish the fact that the most convenient location to adjudicate this case is in the Southern District of Texas, where the majority of witnesses and evidence is located.  *See Galitski v. Samsung Telecommunications Am.*, LLC, No. 8CV1200903CJCJPRX, 2012 WL 12830000, at *3 (C.D. Cal. Nov. 21, 2012).  Given the number of witnesses involved in the key Team decisions that gave rise to the suit, it will be very inconvenient to litigate this case in the Central District of California, where little relevant evidence and few witnesses are located.  Therefore, this factor weighs in favor of transfer.

### 7.  The Availability of Compulsory Process

Few of the witnesses in this case could be compelled to sit for a deposition in the Central District of California.  The witnesses would have to reside, be employed, or regularly transact business *in person* in California to be subject to compulsory process. Fed. R. Civ. P. 45(c)(1)(B).  The fact that these witnesses are employed by a Texas-based corporation that controls a wholly owned subsidiary in California is insufficient, since there is no indication that Team's corporate employees regularly transact business *in person* in California and few of the aforementioned witnesses are based in California. (Mot. at 13; Reply at 7.)  Therefore, this factor weighs in favor of transfer.

### 8.  Cost of Litigation in the Two Forums

Finally, given the substantial imbalance in the location of sources of proof, and in particular, witnesses, the case will be significantly less costly to litigate in Texas. Although Ashworth is an individual, as opposed to a corporation, he is a sophisticated party who knowingly and voluntarily sold his company, by way of a stock purchase, to Team, a company based in Texas.  Ashworth knew full well he would have significant interaction with and oversight by Team's management in Texas.  Indeed, he received substantial compensation for it.  Here, transfer will ensure an overall less costly resolution.  This final factor also weighs in favor of transfer.

In sum, while Ashworth would obviously prefer litigating his claims here in California, the convenience of the parties and witnesses, as well as the interests of justice, demand that venue for this case be transferred to the Southern District of Texas.

//

//

//

**IV.  CONCLUSION**

For the foregoing reasons, Defendant's motion to transfer venue to the Southern District of Texas is GRANTED.


DATED:      September 2, 2016

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE